## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

JOSHUA ASHLEY and NICOLE ASHLEY
individually and on behalf of all others
similarly situated,

              Plaintiffs,              Civil Action No.

              v.

**CLASS ACTION COMPLAINT**

LUMBER LIQUIDATORS, INC.,
LUMBER LIQUIDATORS HOLDINGS, INC.,
LUMBER LIQUIDATORS LEASING, LLC,    **DEMAND FOR JURY TRIAL**
and LUMBER LIQUIDATORS SERVICES, LLC,

              Defendants.

_____/

      Plaintiffs Joshua Ashley and Nicole Ashley, individually and on behalf of all others similarly situated, complaint against Defendants Lumber Liquidators, Inc., Lumber Liquidators Holdings, Inc., Lumber Liquidators Leasing, LLC, and Lumber Liquidators Services, LLC (collectively, "Defendants" or "Lumber Liquidators") as follows:

## INTRODUCTION

      1.    Lumber Liquidators sells composite laminate flooring products that emit formaldehyde at levels known to pose serious health risks.  Lumber Liquidators has known that the flooring products it has manufactured in China that are intended to be used in people's homes emit unsafe levels of formaldehyde.  Nonetheless, Lumber Liquidators has continued to specifically and falsely label these products as being compliant with all limits set by the California Air Resources Board ("CARB") – which it correctly touts as being among the most strict emissions regulations in the nation.  As a result, consumers throughout the country have been buying flooring products from Defendants that are unsafe and should not be distributed or sold, and have been unwittingly installing these dangerous products in their homes.

2.      Laminate wood flooring is generally composed of a base layer of pressed composite wood (particle board or medium-density fiberboard), which is a mixture of sawdust or wood particles bonded together with glue or resin. The base layer is covered with a veneer or other material such as a photographic image of wood, affixed as a decorative surface.

3.      Formaldehyde is a common ingredient in the glue used in the laminate flooring base layer.  If used in low levels, the formaldehyde will quickly dissipate during installation. However, if used in higher levels, the formaldehyde is released as a gas that emanates from the flooring over time.  Long-term exposure to formaldehyde is linked to increased risk of cancer of the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia. Formaldehyde also causes burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain, and nausea.  It has also been linked to the exacerbation of asthma in formaldehyde-sensitive individuals and poses a particular acute risk to children.

4.      Lumber Liquidators supervises and controls the manufacturing of composite laminate wood flooring products in several mills in China.  Lumber Liquidators also packages, distributes, markets, and/or sells laminate wood flooring products that have been manufactured in China to consumers in Florida.

5.      From October 2013 through November 2014, three accredited laboratories tested the formaldehyde emissions of laminate wood flooring from several nationwide retail outlets, including Home Depot, Lowe's, and Lumber Liquidators. Of the dozens of products tested, by far the highest formaldehyde levels were found in the laminate wood flooring sold by Lumber Liquidators that was produced in China. The levels of formaldehyde gas emitted by these Chinese-made Lumber Liquidators products were several times the maximum CARB limits and exceeded the standards promulgated in the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq*. (title VI

2

– formaldehyde Standards of Composite Wood Products). Similar products manufactured in North America generally had much lower formaldehyde levels that complied with the formaldehyde emission standards promulgated by CARB. Similar products tested from Lumber Liquidators' competitors also showed significantly lower formaldehyde levels that generally complied with the CARB formaldehyde emission standards. The list of products that have been tested and found to exceed the CARB limit for formaldehyde emissions is set forth below.

6.       Despite this discrepancy, Lumber Liquidators did not differentiate between its domestically manufactured floor laminates and those made in China. Lumber Liquidators' labels on its Chinese laminate wood flooring products state that the products comply with strict formaldehyde emission standards promulgated by CARB by stating "California 93120 Phase 2 Compliant Formaldehyde."

7.       In 2014 and early 2015, 60 Minutes news conducted an independent investigation into Lumber Liquidators' Chinese-made flooring products.  Investigators purchased 31 boxes of various Chinese-made flooring products from various Lumber Liquidators stores around the country and sent the sample for testing at two certified labs. Of the 31 samples, only *one* was compliant with CARB formaldehyde emissions standards. "Some were more than 13x over the California limit."[1]

8.       60 Minutes also sent undercover investigators to three different mills in China that manufacture laminates and flooring on behalf of Lumber Liquidators. 60 Minutes reported that:

> Employees at the mills openly admitted that they use core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price. At all

[1]*Lumber Liquidators Linked to Health and Safety Violations*, 60 Minutes (Mar. 1, 2015) available at http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations/ (last visited Mar. 10, 2015).

> three mills they also admitted [to] falsely labeling the company's
> laminate flooring as CARB [compliant].[2]

9.  Lumber Liquidators does not give consumers any warnings about unlawful formaldehyde levels in its laminate wood flooring products. Instead, along with its product labels, it represents on its website and its warranties that its flooring products comply with strict formaldehyde standards. Lumber Liquidators has made false and misleading statements that its flooring products comply with CARB formaldehyde standards, and the even more stringent European formaldehyde standards. Lumber Liquidators' website falsely states, "we not only comply with laws-we exceed them." "Highest Quality Flooring. GUARANTEED."[3]

10.  Lumber Liquidators has continually sold these products to Florida customers at its retail stores throughout the state, through its retain website, and through its toll free customer service telephone line.

11.  Plaintiffs purchased and installed a Lumber Liquidators product that was manufactured in China, labeled as being CARB compliant, and that was of a type found to have formaldehyde levels that exceed CARB limits. Plaintiffs seek to represent themselves and similarly situated persons who have purchased Defendant's laminate wood flooring products that were manufactured in China, labeled as CARB compliant, and sold to consumers in Florida and nationwide ("the putative Class"). Plaintiffs seek restitution of monies they and the putative Class spent on Defendants' flooring products, the cost of replacing the products, injunctive relief enjoining Defendants' ongoing unlawful, unfair, and fraudulent business practices, and damages on behalf of themselves and the putative Class.

---

[2] *Id.*
[3] http://www.lumberliquidators.com/11/flooring/quality?WT.ad-GLOBAL FOOTER Quality (last visited on March 2, 2015, Page unavailable as of March 4, 2015).

## PARTIES, JURISDICTION AND VENUE

12.     Plaintiffs Joshua and Nicole Ashley, husband and wife, reside in Port St. Lucie, Florida.

13.     Defendant Lumber Liquidators, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia, 23168.

14.     Defendant Lumber Liquidators Holdings, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia, 23168.

15.     Defendant Lumber Liquidators Leasing, LLC is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia, 23168.

16.     Defendant Lumber Liquidators Services, LLC is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia, 23168.

17.     Lumber Liquidators Holdings, Inc. and its subsidiaries operate as a single business segment with its call center, website and customer service network supporting its retail store operations.  Lumber liquidators conducts substantial business in the State of Florida.  There are 354 Lumber Liquidators stores in the United States, 22 are located in Florida.  Florida is an integral piece of Lumber Liquidators' supply chain.

18.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because a member of the Plaintiff Class is a citizen of Florida and Defendants are citizens of Delaware and Virginia, there are currently 100 or more class members, and the aggregate amount in controversy will exceed $5,000,000.

19.     The Court has personal jurisdiction over all Defendants because a substantial portion of the alleged wrongdoing occurred in Florida.  All Defendants also have sufficient minimum contacts with Florida and have otherwise intentionally availed themselves to Florida

5

markets through promoting, marketing, and selling products sufficient to render the exercise of jurisdiction by this Court permissible under Florida law and the U.S. Constitution.

20.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 (b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District, a substantial part of the property that is the subject of this action is situated in this District, and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

**A.     Lumber Liquidators Represents that its Laminate Wood Flooring Products Meet California's Strict Emissions Standards for Products it Sells Nationwide**

21.     The emissions limits set by the California Air Resources Board ("CARB") are among the most comprehensive and exacting in the country. These standards have served as a model for national standards being considered by the Environmental Protection Agency.

22.     Lumber liquidators invokes these CARB standards and represents to consumers on its website, on its product packaging, and in various other materials that its laminate wood flooring products meet the CARB standards for formaldehyde emissions and are therefore safe. Defendants unequivocally state that though CARB only legally governs products sold in the state of California, Lumber Liquidators ensures that its composite flooring products meet the CARB standard no matter where they are sold.

23.     Lumber Liquidators' website had stated:

Is Lumber Liquidators Compliant with the California law?

**Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the**

6

**CARB standards.** The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

Does CARB only apply to California?

Though it currently applies only to products sold in California, **Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended** to sell the products in California or any other state/country.

What extra steps does Lumber Liquidators take to ensure compliance?

In addition to the California Air Resources Board requirements, **Lumber Liquidators regularly selects one or more finished products from each of its suppliers and submits them for independent third-party lab testing.** This is done as a monitoring activity to validate ongoing quality control.[4]

B.     **California's Formaldehyde Standards**

24.     In 1988, the State of California officially listed Formaldehyde (gas) as a chemical known to cause cancer.

25.     In 1992, the CARB formally listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure.

26.     The CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products in April 2007. The formaldehyde emission standards became effective January 2009 and set decreasing limits in two Phases. Cal. Code Regs., tit. 17, § 93120.2(a).

27.     The CARB Regulations apply to composite wood ("laminate") products including flooring. Cal Code Regs., tit. 17, § 93120.2(a).

---

[4] http://www.lumberliquidators.com/11/flooring/ca-air-resources-board-regulations?Wt.ad—GLOBAL_FOOTER_CaliRegCARB; (page unavailable on March 10, 2015).

28.     The CARB Phase 1 Emission Standard for MDF in effect from January 1, 2009 to December 31, 2010, limited formaldehyde emissions to 0.21 parts per million ("ppm"). The Phase 2 Emission Standard for MDF dictates that as of January 1, 2011, MDF flooring products such as those involved in this action must emit no more than 0.11 parts per million ("ppm") of formaldehyde. The CARB Phase 1 Emission Standard for Thin MDF, which was in effect from January 1, 2009 to December 31, 2011, limited formaldehyde emissions to 0.21 ppm. The CARB Phase 2 Emission Standard for Thin MDF dictates that as of January 1, 2012, thin MDF flooring products such as those involved in this action must emit no more than 0.13 ppm of formaldehyde. Cal. Code Regs., fit. 17, § 93120.2(a). (Hereinafter, the formaldehyde emission standards for both MDF and Thin MDF will be referred to as the "CARB limit.")

C.     **Lumber Liquidators' Laminate Wood Flooring Products Fail to Comply with CARB Limits**

29.     Stated above, Lumber Liquidators' composite wood flooring products that were manufactured in China have been tested by several different laboratories and have been found to have dangerous levels of formaldehyde that far exceed CARB limits and that pose dangers to human health.

30.     Defendants supervise and/or control the manufacturing and packaging of laminate wood flooring products in China that they then distribute, market, and/or sell in Florida and throughout the United States.  Those laminate wood flooring products contain formaldehyde and emit formaldehyde gas at levels that exceed, and sometimes grossly exceed, the CARB limit. Those laminate wood flooring products include the following:

a)     8 mm Bristol County Cherry Laminate Flooring

b)     8 mm Dream Home Nirvana French Oak Laminate Flooring

c)      8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring

d)      12 mm Dream Home Ispiri Americas Mission Olive Laminate Flooring

e)      12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring

f)      12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring

g)      12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring

h)      12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring

i)      12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring

j)      12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring

k)      12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring

l)      12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10029601)

m)      12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10023958)

n)      12 mm Dream Home Kensington Manor Handscraped Summer Retreat Teak Laminate Flooring

o)      12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring

p)      12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring

q)      12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring

9

r)      12 mm Dream Home St. James African Mahogany Laminate Flooring

s)      12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring

t)      12 mm Dream Home St. James Brazilian Koa Laminate Flooring

u)      12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring

v)      12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring

w)      12 mm Dream Home St. James Golden Acacia Laminate Flooring

x)      12 mm Dream Home St. James Nantucket Beech Laminate Flooring

y)      12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring

z)      12 mm Dream Home St. James Vintner's Reserve Laminate Flooring

aa)     15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring

31.     CARB regulations apply to all of the above listed flooring products.

32.     Upon information and belief, each laminate wood flooring product mentioned above emits formaldehyde gas at levels that exceed the CARB limits.

33.     Following the 60 Minutes segment, Lumber Liquidators responded by posting a letter from its Chairman stating "Let me make one thing very clear – our laminate products, all of our products, are 100% safe…We comply with applicable regulations regarding our products, including California standards…."[5]

34.     Product packaging for Lumber Liquidators' laminate wood flooring states: "CARB…CALIFORNIA 93120 Phase 2 Compliant Formaldehyde."  Upon information and belief, this statement appears on all Defendants' laminate flooring product packaging without regard for its truth.

---

[5] http://www.lumberliquidators.com/sustainability/60-minutes-letter-from-tom/ (last visited Mar. 10, 2015).

35.    Lumber Liquidators' purchase orders come with a warranty stating that the customers' purchased flooring products comply "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations."

36.    Instead of warning consumers about formaldehyde emissions from its laminate wood flooring products, Lumber Liquidators' website states that it has Third Party Certifiers approve its flooring products to meet CARB standards:

> To comply with the CARB standards, applicable laminate and engineered flooring and accessories sold by Lumber Liquidators are purchased from manufacturers whose production methods have been certified by a Third Party Certifier approved by the State of California to meet the CARB standards; or from suppliers who source composite wood raw materials only from certified manufacturers. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their composite wood products conform to the specified emission limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.[6]

37.    Lumber Liquidators materially misrepresents the safety of its laminate wood flooring products by advertising and representing that its flooring products are compliant with the CARB limit when in fact they are not.

38.    Lumber Liquidators makes the material omission of failing to tell consumers that they are buying laminate wood flooring products with unlawfully high levels of formaldehyde.

39.    Lumber Liquidators sold these laminate wood flooring products for use in homes in Florida for more than three years.

40.    Lumber Liquidators continues to distribute and sell its laminate wood flooring to customers in Florida and falsely represents that the products are CARB compliant.

---

[6] http://www.lumberliquidators.com/sustainability/health-and-safety/ (last visited Mar. 10, 2015).

11

41.     Upon information and belief, Lumber Liquidators has, at all times material, knowingly misrepresented its laminate wood flooring products as CARB compliant, and knowingly failed to disclose to consumers the unlawful levels of formaldehyde emissions from its laminate wood flooring products.

42.     At the same time that Lumber Liquidators made public statements to consumers that the laminate wood products it sells are sourced from mills whose production methods are CARB compliant, that the products conform to CARB's specified formaldehyde emission limits, and the measures Lumber Liquidators takes to ensure full compliance by its suppliers, Defendant acknowledged the opposite to the SEC, stating, "While our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, *we do not control our suppliers*. Accordingly, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical and responsible manner. Violation of environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical and responsible manner, could ... expose us to legal risks as a result of our purchase of product from non-compliant suppliers."[7]

43.     Despite its stated concern that its suppliers might not comply with environmental regulations, Lumber Liquidators has failed to sufficiently exercise its quality control over those suppliers to ensure that they comply with CARB standards, and Lumber Liquidators continues to

---

[7]     Lumber Liquidators February 25, 2014 10-K at p. 14, http://investors.lumberliquidators.com/index.php?o=25&s=127 (emphasis added). In the same filing, Lumber Liquidators acknowledges that it oversees quality control in its Chinese mills: "We are able to set demanding specifications for product quality and our own quality control and assurance teams are on-site at the mills, coordinating inspection and assurance procedures." *Id*. at p. 5.

sell to Florida and nationwide consumers laminate wood flooring products that Lumber Liquidators obtains from those suppliers.

44.     On June 20, 2013, the news website *Seeking Alpha* published a lengthy article based on a letter to the California Air Resources Board. The letter and article documented high formaldehyde levels in Chinese-made laminate flooring sold by Lumber Liquidators, as shown by tests a certified laboratory conducted on three samples of Chinese-made laminate flooring sold by Lumber Liquidators. Enclosed with the letter were the actual test results showing that the tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits three and one-half times the maximum formaldehyde emission level. The letter notes that Lumber Liquidators nonetheless labeled the product as being CARB compliant.

45.     Upon information and belief, high formaldehyde content resins and glues are less expensive and dry more quickly than low formaldehyde glues and resins. By using high formaldehyde content resins and glues rather than low formaldehyde content resins and glues, Lumber Liquidators' Chinese manufacturers are able to produce laminate wood flooring more quickly and at higher volumes thereby reducing costs and generating greater profits for Lumber Liquidators.

46.     On or about November 26, 2013, a putative federal securities class action lawsuit was filed against Lumber Liquidators in the United States District Court in the Eastern District of Virginia based on drops in the stock price following the *Seeking Alpha* article and its allegations concerning the formaldehyde emissions from Defendant's laminate wood flooring products. *Kiken v. Lumber Liquidators Holdings, Inc., et al.*, No. 4:2013-cv-00157 (E.D. Va.). This case is currently pending. Lumber Liquidators was made aware during the pendency of this and other

lawsuits of complaints and allegations that its laminate wood flooring products from China emit formaldehyde gas at levels that violate the CARB limit.

47.     Numerous Lumber Liquidators customers have posted internet complaints on Defendant's website concerning formaldehyde emissions.  Deborah, of North Fork, California posed on the Consumer Affairs website that Lumber Liquidators represented the products was made in the U.S. but was made in China.  Further, she complained that her child's foot blistered from the formaldehyde content.

48.     Based on lawsuits, articles, and blog posts, Lumber Liquidators knew or should have known that its laminate wood flooring products were not compliant with CARB standards. Despite this knowledge, Lumber Liquidators failed to reformulate its flooring products so that they are CARB compliant or to disclose to consumers that these products emit unlawful levels of formaldehyde. Instead, Lumber Liquidators has sold and continues to sell laminate wood flooring products in Florida and nationwide that exceed the CARB limit while continually representing to consumers that those products are CARB compliant.

49.     In light of the false representations Lumber Liquidators has made regarding formaldehyde levels, and in light of the health risks posed by formaldehyde, Plaintiffs and members of the Class would reasonably fear for their safety by allowing the laminate flooring to remain in their homes. It would therefore be reasonably prudent to incur the cost of replacing the laminate flooring rather than continue to incur the risks posed by the laminate flooring that may contain high levels of formaldehyde.

## PLAINTIFFS' LAMINATE FLOORING PURCHASES

50.     Plaintiffs Joshua and Nicole Ashley purchased Lumber Liquidators' 12mm Dream Home Kensington Manor Laminate Wood in around October of 2014.  They made their purchases

in Port St. Lucie, Florida.  Upon information and belief, the laminate flooring they purchased is one of the models that was tested and shown to have levels of formaldehyde in excess of the CARB limits as described above.

51.     Before purchasing their Lumber Liquidators laminate flooring, Plaintiffs reviewed the product labels of their laminate flooring.  These packages warranted that the laminate flooring they purchased was CARB compliant and did not disclose that the laminate flooring products contained a toxic level of formaldehyde.  They chose to purchase Lumber Liquidators brand laminate flooring instead of competing products based in part on these representations and/or omissions.  Thus, Plaintiffs reasonably believed at the point of sale that the laminate flooring they purchased did not contain toxic levels of formaldehyde or levels exceeding the CARB limits.

52.     Had Plaintiffs known that the laminate flooring products they purchased contained levels of formaldehyde exceeding the CARB limits or toxic levels of formaldehyde, they would not have purchased such laminate flooring.

53.     In light of the risks to their health, as well as the health of their three young children, they now must consider incurring the cost of having their flooring replaced rather than to incur the health risks posed by the formaldehyde levels found in Lumber Liquidators' China-made products.

## CLASS ACTION ALLEGATIONS

54.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and a proposed nationwide class ("Class") initially defined as: *All persons in the United States who purchased from Defendant laminate wood flooring products manufactured in China that were advertised as being CARB compliant, that were for their personal use rather than for resale or distribution.*

Collectively, all these persons will be referred to as "Plaintiffs" or "Plaintiff Class."

55.     Excluded from the Plaintiff Class are: Defendants and any entity or entities in which Defendants have a controlling interest; any entity or entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; all persons that properly execute and timely file a request for exclusion of the Class.

56.     Plaintiffs reserve the right to modify the Class definitions after discovery and at any time up to and including trial.

57.     The action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a)(1-4) and (b)(1).

58.     The Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of the Class members is presently unknown to Plaintiffs, but it is believed that Class members number at least in the thousands. The identity of Class members is ascertainable. Class members' number may be informed of the pendency of this Class action by a combination of direct mail and public notice, or other means.

59.     Common questions of fact and law exist as to all members of the Class, which predominate over questions affecting only individual members of the Class. These include, but are not limited to the following:

a.   Whether Defendants engaged in unlawful, unfair or deceptive business practices by failing to properly label its products it sold to consumers;

b.   Whether the products at issue were mislabeled as a matter of law and violated California CARB emissions standards and Formaldehyde Standards of

16

Composite Wood Products in the Toxic Substances Control Act, 15 U.S.C. 2601, *et. seq.*;

c.   Whether Defendants made unlawful and misleading toxicity representations and warranties with respect to its products sold to consumers;

d.   Whether Defendants violated the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201, *et. seq.*);

e.   Whether Defendants breached its implied warranty of merchantability;

f.   Whether Defendants breached its express warranties;

g.   Whether Defendants were negligent in its labeling and advertising of the laminate wood flooring products;

h.   Whether Defendants unlawfully sold the laminate wood flooring products in violation of the laws of Florida;

i.   Whether Defendants' unlawful, unfair and deceptive practices harmed Plaintiffs and the Class;

j.   Whether Plaintiffs and the Class have been damaged by the unlawful actions of the Defendants and the amount of damages to the Class;

k.   Whether Defendants were unjustly enriched by its deceptive practices;

l.   Whether punitive damages should be awarded; and

m.   Whether Defendants should be enjoined from continuing the conduct complained of herein.

60.   Plaintiffs' claims are typical of the claims of the members of each Class because Plaintiffs bought Defendants' laminate wood flooring products during the Class Period. Plaintiffs are asserting the same rights, making the same claims, and seeking the same relief for themselves

and for all other class members. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and each Class Member sustained similar injuries arising out of Defendants' conduct in violation of Florida law.

61.     The injuries of each member of each Class were caused directly by Defendants' wrongful conduct. The factual underpinning of Defendants' misconduct is common to all Class members of each class and represents a common thread of misconduct resulting in injury to all members of each Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of each member of the Class and are based on the same legal theories.

62.     Plaintiffs are adequate representatives of the Class because Plaintiffs are Class members and Plaintiffs' interests do not conflict with the interests of the members of the Class that Plaintiffs seek to represent. Plaintiffs are represented by experienced and able counsel who have litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Plaintiff Class. Plaintiffs and Plaintiffs' counsel can fairly and adequately protect the interests of the members of the Plaintiff Class.

63.     The class action is the best available method for the efficient adjudication of this litigation because individual litigation of the Plaintiff Class claims would be impractical and individual litigation would be unduly burdensome to the courts. Individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. As the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an

18

important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Violation of Florida's Deceptive and Unfair Trade Practices Act)

64.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege:

65.     Defendants' conduct constitutes unlawful deceptive and unconscionable trade practices. Defendants' conduct was consumer-oriented and this conduct had broad impact on consumers at large. Defendants engaged in false, misleading and unlawful advertising, marketing and labeling of Defendants' laminate wood flooring products. Defendants' manufacture, distribution and sale of Defendants' laminate wood flooring products were similarly unlawful.

66.     Defendants unlawfully sold their laminate wood flooring products in Florida during the Class period.

67.     As fully alleged above, by advertising, marketing, distributing and selling mislabeled laminate wood flooring products to Plaintiffs and other members of the Class who purchased Defendants' laminate wood flooring products in Florida, Defendants engaged in, and continue to engage in, unlawful deceptive and unconscionable trade practices.

68.     Defendants' misleading marketing, advertising, packaging and labeling of Defendants' laminate wood flooring products was likely to deceive reasonable consumers.

19

69.     Plaintiffs and other members of the Class who purchased Defendants' laminate wood flooring products in Florida were deceived.

70.     Defendants have engaged in unlawful deceptive and unconscionable trade practices.

71.     Plaintiffs and other members of the Class who purchased Defendants' laminate wood flooring products in Florida were injured by Defendants' unlawful deceptive and unconscionable trade practices.

72.     Defendants sold to Plaintiffs and the members of the Class who purchased Defendants' laminate wood flooring products in Florida, a product that had no economic value. Defendants' violation of Fla. Stat. § 501.201, *et. seq.* remains ongoing.

73.     As a direct and proximate cause of Defendants' violation of Fla. Stat. § 501.201, *et. seq.*, Plaintiffs and the members of the Class who purchased Defendants' laminate wood flooring products in Florida were injured when they paid for these illegal and worthless products. Plaintiffs and the members of the Class who purchased Defendants' laminate wood flooring products in Florida have been damaged in an amount to be determined at trial.

74.     As a result of Defendants' unlawful deceptive and unconscionable trade practices, Plaintiffs and the members of the Class who purchased laminate wood flooring products in Florida, pursuant to Fla. Stat. § 501.201, *et. seq.*, are entitled to damages and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiffs and the members of the Class who purchased Defendants' laminate wood flooring products in Florida any money paid for Defendants' laminate wood flooring products.

75.     The conduct described above constitutes unfair or deceptive trade practices predominately and substantially affecting the conduct of trade or commerce throughout the United

States in violation of the Florida Deceptive and Unfair Trade Practice Act, Fla. Stat. § 501.201, *et. seq.*, and other similar state statutes prohibiting unfair and deceptive acts and practices (collectively "DUTPA").

76.     Defendants' deceptive trade practices are the proximate cause of the Plaintiffs and the members of the class having suffered damages in an amount to be proven at trial.

77.     Defendants' conduct complained of herein renders it liable under the other states' DUTPAs for damages for the consequences of such conduct.

78.     Defendants' actions were willful, wanton, malicious, and in total disregard for the rights of the Plaintiffs and Class Members. Defendants knew or should have known, in light of the surrounding circumstances that their conduct in violation of states' Deceptive and Unfair Trade Practices Acts would naturally and probably result in damages to Plaintiffs and Class Members. Defendants continued their wrongful conduct with malice or in reckless disregard of the consequences, from which malice may be inferred. Further, Defendants intentionally pursued its course of conduct for the purpose of causing Plaintiffs and Class Members damages. Punitive damages should be awarded to deter the actions of Defendants and others who might engage in similar action or conduct.

79.     Plaintiffs and Class Members are entitled to any and all penalties and/or multipliers of damages as may be provided for in the states' DUTPAs.

80.     Plaintiffs and Class Members are entitled to an injunction enjoining the Defendants from further deceptive and unfair trade practices in connection with the sale of the Mislabeled Products.

81.     Plaintiffs and Class Members are entitled to an award of reasonable attorneys' fees, costs of this action, plus pre and post judgment interest as may be allowed by law.

## SECOND CAUSE OF ACTION
### (Violation of the Magnuson-Moss Warranty Act)

82.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege:

83.     Plaintiffs and the other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

84.     Each Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4) – (5).

85.     Defendants' flooring that was purchased separate from the initial construction of the structure into which it was to be installed constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

86.     Defendants' express warranties and written affirmations of fact regarding the nature of the flooring, *i.e.*, that the flooring was in compliance with CARB formaldehyde standards, constitutes a written warranty within the meaning of 15 U.S.C. § 2301(6).

87.     Defendants breached their warranties by manufacturing, selling, and/or distributing flooring products with levels of formaldehyde that exceed the CARB standards, or by making affirmative representations regarding CARB compliance without knowledge of its truth.

88.     Defendants' breach deprived Plaintiffs and the other Class members of the benefit of their bargains.

89.     The amount in controversy of Plaintiffs' individual claims exceeds the value of $25. In addition, the amount in controversy exceeds the value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this action.

90.     Defendants, upon information and belief, have been notified of its breach of written warranties and failed to adequately cure those breaches. As a direct and proximate result of Defendants' breaches of its written warranties, Plaintiffs and the other Class members sustained damages in amounts to be determined at trial.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

91.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege:

92.     As a result of Defendants' unlawful and deceptive actions described above, Defendants was enriched at the expense of Plaintiffs and the Class through the payment of the purchase price for the laminate wood flooring products.

93.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and the Class, in light of the fact that the laminate wood flooring products purchased by Plaintiffs and the Class were illegal products and were not what Defendants represented them to be. Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiffs and the Class for the monies paid to Defendants for the laminate wood flooring products.

### FOURTH CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

94.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege:

95.     Implied in the purchase of the laminate wood flooring products by Plaintiffs and the Class is the warranty that the purchased products are legal and can be lawfully sold and possessed.

96.     Defendants reasonably knew or should have known those laminate wood flooring products were unlawful for sale pursuant to The Toxic Substance Control Act, 15 U.S.C, 2601, *et. seq.*

97.     When Defendants sold these products they impliedly warranted that the products were legal and could be lawfully possessed and/or sold and therefore, merchantable.

98.     No reasonable consumer would knowingly purchase a product that is illegal to own or possess.

99.     The purchased laminate wood flooring products is unfit for the ordinary purpose for which it was intended.

100.    In fact, this laminate wood flooring products is illegal, mislabeled, and economically worthless.

101.    As a result, Plaintiffs and the Class were injured through their purchase of unsuitable, useless, illegal and unsellable products.

102.    By reason of the foregoing, Plaintiffs and the Class were damaged in the amount they paid for laminate wood flooring products.

**FIFTH CAUSE OF ACTION**
**(Breach of Express Warranty)**

103.    Plaintiffs repeat and reallege each of the above paragraphs as if fully set forth herein.

104.    Defendants' representations of fact and/or promises on the labels relating to their laminate wood flooring products created express written warranties that the product would conform to Defendants' representation of fact and/or promises.

24

105.    The Defendants' description on the labeling of their laminate wood flooring products that it complied with CARB and California emissions regulations became part of the basis of the bargain, creating express written warranties that the product purchased by Plaintiffs and the other Class Members would conform to Defendants' description and specification. The laminate wood flooring products purchased by Plaintiffs did not so conform.

106.    Defendants provided warranties that their laminate wood flooring products were labeled in compliance with state law and were not mislabeled under state law. Defendants breached these express written warranties.

107.    As a result of the foregoing, Plaintiffs and the other Class Members have suffered damages, in that the value of the product they purchased was less than warranted by Defendants.

108.    Defendants engaged in a scheme of offering the laminate wood flooring products for sale to Plaintiffs and members of the Class by way of, inter alia, false and misleading product packaging and labeling.

109.    Plaintiffs and the Class were the intended beneficiaries of such representations and warranties.

110.    Plaintiffs assert this cause of action for violations of Florida law pertaining to express warranties. Plaintiffs and the Class were injured as a result of Defendants' breach of their express warranties about the Toxic Laminate Flooring. Plaintiffs and the Class are entitled to damages arising from the breach of warranty.

### SIXTH CAUSE OF ACTION
#### (Negligence)

111.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege:

112.    In making representations of fact to Plaintiffs and the other Class members about their laminate wood flooring products, Defendants failed to lawfully label or advertise their laminate wood flooring products and violated their duties to disclose the material facts alleged above. Among the direct and proximate causes of said failure to disclose were the negligence and carelessness of Defendants.

113.    Plaintiffs and the other Class members, as a direct and proximate cause of Defendants' breaches of their duties, reasonably relied upon such representations to their detriment. By reason thereof, Plaintiffs and the other Class members have suffered damages.

114.    As described above, Defendants' actions violated Florida and Federal law designed to protect Plaintiffs and the Class. Defendants' illegal actions constitute negligence per se. Moreover, misbranding provisions violated by Defendants are strict liability provisions.

115.    As alleged above, Plaintiffs and the Class were injured by Defendants' unlawful actions and are entitled to recover an amount to be determined at trial due to the injuries and loss they suffered as a result of Defendants' negligence.

### SEVENTH CAUSE OF ACTION
### (Declaratory Relief)

116.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein and further allege.

117.    Plaintiffs, on behalf of themselves and all others similarly situated, contend that Defendants' sale of laminate wood flooring products in Florida does not comply with the CARB standards.  Upon information and belief, Defendants contend that their sale of laminate wood flooring products complies with the CARB standards.

26

118.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class members, seek the following relief against all Defendants:

A.    An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, and finding that Plaintiffs are proper representatives of the Class;

B.    Actual and/or compensatory damages and/or the recovery of civil penalties as provided by Fla. Stat. § 501.2075 and/or an award equal to the amount by which the Defendants have been unjustly enriched;

C.    An order awarding pre-judgment and post-judgment interest;

D.    The costs of this proceeding and attorneys' fees, as provided by Fla. Stat. § 501.2105;

E.    Punitive damages in an appropriate amount;

F.    An order permanently enjoining Defendants from continuing their unfair and/or deceptive conduct; and

G.    Any further compensatory, injunctive, equitable or declaratory relief including refunds as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

DATED: March 11, 2015                    Respectfully submitted,

By: s/Scott P. Schlesinger
    Scott P. Schlesinger

Scott P. Schlesinger (Florida Bar No. 444952)
Jeffrey L. Haberman (Florida Bar No. 98522)
SCHLESINGER LAW OFFICES, P.A.
1212 SE 3rd Avenue
Fort Lauderdale, FL 33316-1906
Telephone: (954) 467-8800
Facsimile: (954) 320-9509
scott@schlesingerlaw.com
jhaberman@schlesingerlaw.com